## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Northern Division

|  |  |
|---|---|
| ALLISON G. EATON<br>1269 Allison Court<br>Belcamp, MD 21014<br>Harford County<br>　　　　Plaintiff, |  |
| v. | Civil Action No.: |
| UPPER CHESAPEAKE<br>　　MEDICAL CENTER, INC.<br>d/b/a Upper Chesapeake Medical Center<br>500 Upper Chesapeake Drive<br>Bel Air, MD 21014<br>Harford County | JURY TRIAL DEMANDED<br><br>COMPLAINT |
| & UPPER CHESAPEAKE HEALTH<br>　　SYSTEM, INC.<br>d/b/a Upper Chesapeake Health System and/or<br>　　Upper Chesapeake Health and/or<br>　　Upper Chesapeake Medical Center<br>520 Upper Chesapeake Drive<br>Bel Air, MD 21014<br>Harford County |  |
| & UPPER CHESAPEAKE<br>　　MEDICAL SERVICES, INC.<br>d/b/a Upper Chesapeake Health System and/or<br>　　Upper Chesapeake Medical Center and/or<br>　　Upper Chesapeake Health<br>520 Upper Chesapeake Drive<br>Bel Air, MD 21014<br>Harford County |  |
| 　　Defendants. |  |

## COMPLAINT

Plaintiff, Allison Eaton, by her undersigned counsel, sues Defendants, Upper Chesapeake Medical Center, Inc., Upper Chesapeake Health System, Inc., and Upper Chesapeake Medical Services, Inc.

## PRELIMINARY STATEMENT

Allison Eaton ("Plaintiff"), an individual who is deaf, routinely receives medical care at Upper Chesapeake Medical Center ("Upper Chesapeake").  She has requested and been denied qualified sign language interpreter services for the majority of her visits to Upper Chesapeake.  As a result, she has been unable to communicate effectively with Upper Chesapeake's medical personnel.  Defendants' failure to provide qualified sign language interpreter services to ensure effective communication with Plaintiff violates Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.* ("ADA"), and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504").

## THE PARTIES

1.  Allison Eaton resides at 1269 Allison Court in Belcamp, MD, 21014.

2.  Upper Chesapeake Medical Center, Inc. is located at 500 Upper Chesapeake Drive in Bel Air, MD 21014.

3.  Upper Chesapeake Health System, Inc. is located at 520 Upper Chesapeake Drive in Bel Air, MD 21014.

4.  Upper Chesapeake Medical Services, Inc. is located at 520 Upper Chesapeake Drive, Bel Air, MD 21014.

5. Upon information and belief, Upper Chesapeake Medical Center, Inc., Upper Chesapeake Health System, Inc., and Upper Chesapeake Medical Services, Inc., are responsible for the operation of, and provision of medical services at, Upper Chesapeake.

## JURISDICTION

6. This is a civil action seeking judgment, relief, and/or damages brought pursuant to the ADA and Section 504.  This court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4).

## FACTUAL ALLEGATIONS

7. Ms. Eaton is deaf.  She is substantially limited in the major life activities of hearing and speaking.

8. Ms. Eaton's primary means of communication is American Sign Language.

9. Because Upper Chesapeake is the closest hospital to where Ms. Eaton lives, there is a reasonable likelihood that Ms. Eaton will use the services of Upper Chesapeake again.

10. Upper Chesapeake does not have policies, procedures, or practices that ensure effective communication with individuals who are deaf or hard of hearing, equal access, and an equal opportunity to participate in and benefit from its health care services as mandated by the ADA and Section 504.

### November 2006 Hospitalization

11. On November 6, 2006, Ms. Eaton went to the emergency room in the late afternoon after having an asthma attack.

12. Ms. Eaton requested that the hospital provide qualified sign language interpreters to ensure effective communication with her.

13. The hospital did not provide qualified sign language interpreters at any time during Ms. Eaton's stay.

14. Instead, hospital staff attempted to communicate with Ms. Eaton through writing and trying to get her to lipread.

15. Writing back and forth and lipreading did not result in effective communication because Ms. Eaton was not able to understand or communicate questions about vital information such as, but not limited to, the nature of her treatment and the prognosis.

16. Ms. Eaton was later discharged from the hospital.

### March 2007 Hospitalization

17. On March 18, 2007, Ms. Eaton went to the emergency room in the late afternoon following an asthma attack.

18. Ms. Eaton requested that the hospital provide qualified sign language interpreters to ensure effective communication with her.

19. The hospital did not provide qualified sign language interpreters at any time during Ms. Eaton's stay.

20. Hospital staff attempted to communicate with Ms. Eaton through writing and trying to get her to lipread.

21. Writing back and forth and lipreading did not result in effective communication because Ms. Eaton was not able to understand or communicate questions about vital information such as, but not limited to, the nature of her treatment and the prognosis.

22. Ms. Eaton was later discharged from the hospital.

### September 2007 Hospitalization

23. On September 24, 2007, Ms. Eaton went to the emergency room following a car accident.

24. Ms. Eaton requested that the hospital provide qualified sign language interpreters to ensure effective communication with her.

25. The hospital provided a sign language interpreter approximately one to three hours after Ms. Eaton arrived at the emergency room.

26. Prior to the interpreter's arrival, the hospital staff attempted to communicate with Ms. Eaton by writing and trying to get her to lipread.

27. Writing back and forth and lipreading did not result in effective communication because Ms. Eaton was not able to understand or communicate questions about vital information such as, but not limited to, the nature of her treatment and the prognosis.

28. During the time period when there was an interpreter, there was effective communication.

29. Ms. Eaton was later discharged from the hospital.

### August 2008 Hospitalization

30. On August 12, 2008, Ms. Eaton went to the emergency room after experiencing muscle pain.

31. Ms. Eaton requested that the hospital provide qualified sign language interpreters to ensure effective communication with her.

32. The hospital provided a sign language interpreter approximately one to three hours after Ms. Eaton arrived at the emergency room.

33. The interpreter left before Ms. Eaton was discharged.

34. The hospital did not provide interpreters for the remainder of Ms. Eaton's hospitalization.

35. During the intervals before the interpreter arrived and after the interpreter left, the hospital staff attempted to communicate with Ms. Eaton through writing and trying to get her to lipread.

36. Writing back and forth and lipreading did not result in effective communication because Ms. Eaton was not able to understand or communicate questions about vital information such as, but not limited to, the nature of her treatment and the prognosis.

37. During the time period when there was an interpreter, there was effective communication.

38. Ms. Eaton was later discharged from the hospital.

### December 2008 Hospitalization

39. On December 14, 2008, Ms. Eaton went to the emergency room when she began experiencing the symptoms of pneumonia.

40. Ms. Eaton was hospitalized for four days.

41. Ms. Eaton requested that the hospital provide qualified sign language interpreters to ensure effective communication with her.

42. The hospital did not provide interpreter services at any time during Ms. Eaton's stay.

43. The hospital staff attempted to communicate with Ms. Eaton through writing and trying to get her to lipread.

44. Writing back and forth and lipreading did not result in effective communication because Ms. Eaton was not able to understand or communicate questions about vital information such as, but not limited to, the nature of her treatment and the prognosis.

45. Ms. Eaton was discharged on December 17, 2008.

### May 2009 Hospitalization

46. On May 30, 2009, Ms. Eaton went to the emergency room at approximately 10 p.m. after experiencing the symptoms of gastritis.

47. Ms. Eaton requested that the hospital provide qualified sign language interpreters to ensure effective communication with her.

48. The hospital did not provide qualified sign language interpreters at any time during Ms. Eaton's stay.

49. The hospital staff attempted to communicate with Ms. Eaton through writing and trying to get her to lipread.

50. Writing back and forth and lipreading did not result in effective communication because Ms. Eaton was not able to understand or communicate questions about vital information such as, but not limited to, the nature of her treatment and the prognosis.

51. Ms. Eaton was discharged in the early morning hours of May 31, 2009.

### COUNT I
### TITLE III OF THE AMERICANS WITH DISABILITIES ACT OF 1990

52. Plaintiff repeats and re-alleges paragraphs 1 through 51 in support of this claim.

53. Plaintiff is an individual with a disability under the ADA, 42 U.S.C. § 12102(2).

54. Defendants are public accommodations as defined under Title III of the ADA, 42 U.S.C. §§ 12181 *et seq*.

55. Defendants have discriminated against Plaintiff on the basis of her disability by denying Plaintiff auxiliary aids and services necessary to ensure effective communication between Plaintiff and

Defendants, equal access, and an equal opportunity to participate in and benefit from Defendants' health care services in violation of Title III of the ADA, 42 U.S.C. §§ 12181 *et seq.*

56. Defendants' actions caused Plaintiff to feel extremely upset, confused, frustrated, and distraught.

57. As a result of Defendants' actions, Plaintiff has been injured and suffered pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

## COUNT II
## SECTION 504 OF THE REHABILITATION ACT OF 1973

58. Plaintiff repeats and re-alleges paragraphs 1 through 51 in support of this claim.

59. Plaintiff is an individual with a disability under Section 504, 29 U.S.C. § 794.

60. Defendants are recipients of federal financial assistance. Defendants receive federal financial assistance by virtue of their participation in programs including but not limited to Medicaid and Medicare.

61. Defendants have discriminated against Plaintiff on the basis of her disability by denying Plaintiff auxiliary aids and services necessary to ensure effective communication between Plaintiff and Defendants, equal access, and an equal opportunity to participate in and benefit from Defendants' health care services in violation of Section 504.

62. Defendants' actions caused Plaintiff to feel extremely upset, confused, frustrated, and distraught.

63. As a result of Defendants' actions, Plaintiff has been injured and suffered pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court provide the following relief:

a. Issue a declaratory judgment that Defendants' policies, procedures, and practices have subjected Plaintiff to discrimination in violation of Title III of the ADA and Section 504.

b. Enjoin Defendants from any policy, procedure, or practice that will deny Plaintiff equal access to and an equal opportunity to participate in and benefit from Defendants' services or that denies Plaintiff effective communication with Defendants;

c. Order Defendants to promulgate and comply with policies and procedures to ensure that Defendants do not discriminate in the future against Plaintiff and individuals who are deaf and hard of hearing;

d. Order Defendants to provide and pay for qualified interpreter services when necessary to ensure effective communication with Plaintiff and individuals who are deaf or hard of hearing in all services offered by Defendants;

e. Order Defendants to train all of their employees about Plaintiff's rights and the rights of individuals who are deaf or hard of hearing and about Defendants' policy and procedures for providing auxiliary aids and services, including providing qualified sign language interpreters;

   f. Order Defendants to notify individuals who are deaf or hard of hearing of their right to effective communication, how to request qualified interpreter or other services, and how to file a grievance;

   g. Award compensatory damages;

   h. Award reasonable costs and attorneys' fees; and

   i. Award any and all other relief that may be necessary and appropriate.

## JURY DEMAND

A jury is demanded on all issues so triable.

         Respectfully submitted,

         ____/s/_____
         Marc Charmatz (Fed. Bar No. 09358)
         Rosaline Crawford (Fed. Bar No. 15643)
         National Association of the Deaf
         Law and Advocacy Center
         8630 Fenton Street, Suite 820
         Silver Spring, MD 20910
         Tel: (301) 587-7732
         Fax: (301) 587-1791
         marc.charmatz@nad.org
         rosaline.crawford@nad.org

Serve on (for all Defendants):
Resident Agent-
Resagent, Inc.
7 Saint Paul Street
Suite 1400
Baltimore, MD 21202

Date:  August 12, 2009